*(handwritten top left)* Drive 2008-034 2008-034 4/22/08

*(barcode top right)* Case: 2008 CRW5LD 001516

# SUPERIOR COURT OF THE DISTRICT OF COLUMB

## SEARCH WARRANT

**TO:**   CHIEF, METROPOLITAN POLICE DEPARTMENT OR ANY OTHER LAW ENFORCEMENT OFFICER

(Specific Law Enforcement Officer or Classification of Officer of the Metropolitan Police Department or other Authorized Agency)

Affidavit, herewith attached, having been made before me by   Ofc. Devinci C. Wooden Gun-Recovery Unit Nsid

#4386                                                                that he has probable cause to believe

that on the (person) (premises) (vehicle) (object) known as   2505 Brentwood Road ,Northeast, Washington D.C., which is

Described as a two-story white in color house. The front door of this house is brown in color with white trim in it, there is a white in color steel storm door attached to the house. The numbers 2505 are black in color and attached to the left of the house as one would face it. There is a white in color mailbox that is located below the numbers 2505.

in the District of Columbia, there is now being concealed certain property,   Cocaine and for any other illegal narcotics, and the

Seizure of evidence, which includes but is not limited to, narcotics, paraphernalia related to the preparation, packaging and use of narcotics, firearms, ammunition, books, records, receipts, tally sheets, money orders, bank records, pagers, cellular phones (and numbers contained therein), cellular documents, photographs, videotapes, indicia of occupancy, residence and/or ownership of the listed residence.

which is   In Violation of D.C. Code                                                          and as I am satisfied

(Alleged grounds for seizure)

that there is probable cause to believe that the property so described is being concealed on the above designated (person) (premises) (vehicle) (object) and that the foregoing grounds for issuance of the warrant exist.

YOU ARE HEREBY AUTHORIZED within 10 days of the date of issuance of this warrant to search in the daytime/at any time of the day or night, the designated (person) (premises) (vehicle) (object) for the property specified and if the property be found there.

YOU ARE COMMANDED TO SEIZE IT, TO WRITE AND SUBSCRIBE an inventory of the property seized, to leave a copy of this warrant and return to file, a further copy of this warrant and return with the Court on the next Court day after its execution.

Issued this   23rd   day of   April   , 20 08

Judge, Superior Court of the District of Columbia

---

## RETURN

I received the above detailed warrant on   April 23   , 20 08   and have executed it as follows:

On   April 23   , 20 08   , at   5:52   P M., I searched the (person) (premises) (vehicles) (object) described in the warrant and I left a copy of the warrant and return with   Eugene Wright   properly posted.

(Name of person searched or owner, occupant, custodian or person present at place of search)

The following is an inventory of the property taken pursuant to this warrant:

1. Knotted Plastic Containing Chunks of white Rock-like substance
2. Empty Unused ziplock Bags used for Packaging Narcotics
3. mail matter in the name of Brando Lumpkins
4. Digital Scale

This inventory was made in the presence of   Sgt. Habashlet, ofc. Wooden, ofc. Tyly, ofc. Yanues ofc. Green, Det. Wayne Gorab, ofc. Kyle

I swear that this is a true and detailed account of all property taken by me under this warrant.

Executing Officer

Subscribed and sworn to before me this _____ day of _____ , 20 _____

Judge, Superior Court of the District of Columbia

Form CD(17)-1855 / Mar. 89
9-2794 stk.234

*(handwritten)* EXH. 1

AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANTS
SUPERIOR COURT OF THE DISTRICT OF COLUMBIA

FOR THE ENTIRE PREMISES KNOWN AS 2505 BRENTWOOD ROAD, NORTHEAST, WASHINGTON D.C., WHICH IS DESCRIBED AS A TWO-STORY WHITE IN COLOR SINGLE FAMILY HOME. THE NUMBERS 2505 ARE BLACK IN COLOR AND ARE AFFIXED TO THE HOUSE. THESE NUMBERS ARE TO THE LEFT OF THE HOUSE AS ONE WOULD FACE IT. THE FRONT DOOR OF THIS HOUSE IS BROWN IN COLOR, AND HAS WHITE TRIM IN IT. THERE IS A WHITE IN COLOR STEEL SECURITY DOOR ATTACHED TO THE HOUSE. THE WINDOWS TO THE HOUSE HAVE WHITE TRIM AROUND THEM. THERE IS ALSO A WHITE IN COLOR MAILBOX THAT IS TO THE LEFT OF THE HOUSE AS ONE WOULD FACE IT.

1. Your affiant has been a member of the Metropolitan Police Department, for the past seventeen and half (17 1/2) years, three of which I have been assigned to the Third District Drug Enforcement Unit as a Narcotics Investigator.  I have also been assigned to the Gun-Recovery Unit for six years. During this time your affiant has participated in excess of over 300 arrests for narcotic violations and have been involved in the execution of over 300 search warrants.  I have been involved in surveillance, which has led to over 100 narcotic arrests. Your affiant has also completed basic narcotics courses and other related classes.

2. Based upon the affiant's training, experience and participation in narcotic investigations, gun-recovery investigations, he has personal knowledge that a narcotic trafficker maintains books, records, receipts, ledgers, travel receipts, money orders, bank records, safety deposit keys, and other papers relating to the transportation, ordering, sale and distribution of controlled substances. Further, your affiant knows that the aforementioned items are generally maintained where the narcotic traffickers can readily access them.

3. It is common for the drug traffickers to hide narcotics, firearms, and the proceeds of drug sales, in secure locations to protect them from discovery by law enforcement authorities, and competition.

4. Preceding the week of April 17, 2008, the below listed CI stated that it observed a large amount of white rock-like substance known to be crack-cocaine inside of 2505 Brentwood Road, Northeast, Washington D.C. This CI based this on its experience and the appearance of the white rock-like substance it knows to be crack-cocaine.

5. Within the past seventy-two hours this CI stated that it observed a large quantity of white rock-like substance inside 2505 Brentwood Road, Northeast, Washington, D.C. This large amount of white rock-like substance is consistent with what it knows to be crack-cocaine. This CI then stated that the subject's nickname is "Big Man". He is described as a black male

approximately 6'3 in height, weighing approximately 300 pounds, a medium complexion, and resides at 2505 Brentwood Road, Northeast, Washington D.C. This CI has provided information in the past that has led to the seizure of large amounts of Crack-cocaine, marijuana, U.S. Currency, and Firearms. The information has led to numerous adult arrests. This CI has also provided information regarding individuals who were selling drugs, and carrying firearms.

6. This CI advised that "Big Man" sells crack-cocaine. This CI also stated that it observed the subject "Big Man" sell crack-cocaine. This CI also stated that it observed this subject go inside of the aforementioned location on several occasions retrieve large quantities of this white rock-like substance, which it knows from its experience to be crack-cocaine.

7. This CI also stated that "Big Man" makes a great deal of money in the Northeast, Washington D.C., neighborhood.

8. Further investigation revealed that "Big Man" has a real name of Robert Eugene Wright, with a social security number of 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, date of birth of August 11,1963, 6'5 in height, weighing approximately three hundred and ninety seven pounds (397 lbs.), has a PDID NUMBER of 401-350, medium complexion, brown eyes and black hair. A check through Washington Area Law-Enforcement System revealed that Robert Eugene Wright has prior charges for February 29, 1996 No Permit, June 5, 1996 No Permit, August 6, 1999 No Permit, March 5, 2004 Fugitive From Justice, April 29, 2004 Fugitive From Justice . This subject is also pending sentencing in United States Federal Court for Possession of Crack-cocaine.  This CI has never provided false or inaccurate information in the past or present to Law-enforcement.
└─ with intent to distribe  Dev.

(A) Based on the above facts and circumstances, your affiant has probable cause to believe that inside of 2505 Brentwood Road, Northeast, Washington D.C. that there are narcotics inside of the aforementioned premises.

(B) Therefore, the affiant respectfully requests that a D.C. Superior Court Search Warrant be issued for 2505 Brentwood Road, Northeast, Washington D.C., for the seizure for any, narcotics, paraphernalia, money, records, personal papers, photographs, and the accumulation and disposition of proceeds of narcotic trafficking.

9. Furthermore it is a common practice for drug dealers to secrete contraband, proceeds of drug sales and records of transactions in secure locations within their residences. It is also common practice for narcotics traffickers to utilize safes within their residence to safeguard and facilitate the concealment of the above-described items and to use and

Possess paging devices and cellular phones to facilitate their distribution of narcotics.

Based on the above facts and information, your affiant has probable cause to believe that inside of 2505 Brentwood Road, Northeast, Washington D.C., is a quantity of narcotics, which is a violation of D.C. Code.

Therefore, your affiant respectfully request that a D.C. Superior Court Search Warrant be issued for the entire premises known as 2505 Brentwood Road, Northeast, Washington D.C., for narcotics, which is in Violation of D.C. Code.

Affiant, Devinci Wooden
Officer,
MPD NSID Gun-Recovery Unit

Subscribed and sworn to before me this ___ day of April 2008.

_____
Judge, Superior Court, District of Columbia

**U.S. Department of Justice**
Federal Bureau of Prisons

# Program
# Statement

**OPI:** HSD/HPB
**NUMBER:** 6031.01
**DATE:** 1/15/2005
**SUBJECT:** Patient Care

1. **PURPOSE AND SCOPE.**  To effectively deliver medically necessary health care to inmates.

2. **PROGRAM OBJECTIVES.**  The expected result of this program is:

Health care will be delivered to inmates in accordance with proven standards of care without compromising public safety concerns inherent to the agency's overall mission.

3. **DIRECTIVES REFERENCED**

| | |
|---|---|
| P1070.07 | Research (5/12/99) |
| P1351.05 | Release of Information (9/19/02) |
| P3735.04 | Drug Free Workplace (6/30/97) |
| P4500.04 | Trust Fund Warehouse/Laundry Manual (12/15/95) |
| P4700.04 | Food Service Manual (10/7/96) |
| P5050.46 | Compassionate Release; Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) & 4205(g) (5/19/98) |
| P5280.08 | Furlough (2/4/98) |
| P5324.04 | Sexual Abuse/Assault Prevention and Intervention Program (12/31/97) |
| P5324.05 | Suicide Prevention Program (3/1/04) |
| P5521.05 | Searches of Housing Units, Inmates, and Inmate Work Areas (6/30/97) |
| P5553.06 | Escape/Death Notifications (8/23/99) |
| P6010.01 | Administrative Safeguards for Psychiatric Treatment and Medication (9/21/95) |
| P6010.02 | Health Services Administration (1/15/05) |
| P6013.01 | Health Services Quality Improvement (1/15/05) |
| P6027.01 | Health Care Provider Credential Verification, Privileges, and Practice Agreement Program (1/15/05) |

Exh. 2

```
        P6070.05  Birth Control, Pregnancy, Child Placement and
                  Abortion (8/9/96)
        P6080.01  Autopsies, Authority to Order (5/27/94)
        P6090.01  Health Information Management (1/15/05)
        P6190.02  Infectious Disease Management (10/3/95)
        P6270.01  Medical Designations and Referral Services for
                  Federal Prisoners (1/15/05)
        P6340.04  Psychiatric Services (1/15/05)
        P6360.01  Pharmacy Services (1/15/05)
        P6370.01  Laboratory Services (1/15/05)
        P6400.02  Dental Services (1/15/05)
```

Code of Federal Regulations, Chapter 29, Part 1910.95

4. **STANDARDS REFERENCED**

   a.  American Correctional Association 4th Edition Standards for
Adult Correctional Institutions: 4-4344**(M)**, 4-4346, 4-4347,
4-4348, 4-4349, 4-4351**(M)**, 4-4380**(M)**, 4-4381**(M)**, 4-4382**(M)**,
4-4385, 4-4392, 4-4393, 4-4394, 4-4408, 4-4409, 4-4412, 4-4422,
4-4423, 4-4424, 4-4426, and 4-4427

   b.  American Correctional Association 3rd Edition Standards for
Adult Local Detention Facilities:  3-ALDF-4E-01, 3-ALDF-4E-02,
3-ALDF-4E-03, 3-ALDF-4E-04, 3-ALDF-4E-06, 3-ALDF-4E-07,
3-ALDF-4E-08, 3-ALDF-4E-15, 3-ALDF-4E-16, 3-ALDF-4E-27,
3-ALDF-4E-26, 3-ALDF-4E-05, and 3-ALDF-4E-30

5. **DEFINITIONS**

   a.  **Health Services Unit (HSU).**  The HSU is the organizational
unit that provides urgent and routine health care.  In addition,
the HSU is the designated part of an institution, including
Medical Referral Centers (MRC), that delivers health care to
inmates on an ambulatory or observation basis.  The provision of
health care is subdivided into:

   ● Urgent Services;
   ● Observation Services; and
   ● Ambulatory Care Services.

   b.  **Outpatient Clinic.**  This area within the HSU provides
diagnostic and other support services health care staff use to
provide urgent care and ambulatory care services.  It includes
examination rooms, treatment rooms, dental clinic, radiology and
laboratory areas, pharmacy, waiting areas, and administrative
offices.

P6031.01
1/15/2005
Page 3

c.  **Observation Area.**  The observation area provides accommodations of limited duration for inmates who are being treated for noncritical illnesses, recovering from surgery, or require observation, and who do not require acute care hospitalization or 24-hour nursing care.

d.  **Medical Referral Center (MRC).**  An MRC provides a full range of diagnostic and therapeutic services, consistent with its individual mission; and a wide range of inpatient specialty consultative and other services.  **Inpatient services are available only at MRCs.**

The Medical Director will designate each MRC's mission(s). Each MRC will seek and maintain accreditation by the Joint Commission for the Accreditation of Healthcare Organizations (JCAHO) under appropriate standards in accordance with its mission.  Unless Bureau policy specifies otherwise, MRCs will organize their programs to comply with JCAHO standards.

e.  **Primary Care Provider Team (PCPT).**  A PCPT is a core group of health care providers and support staff whose function is to provide direct patient care.

f.  **Advance Directive.**  For purposes of this PS, an "advance directive" is a written instrument (sometimes referred to as a "living will" or other similar document) by which a patient expresses his/her health care wishes in the event of a terminal or irreversible condition, during which that individual is no longer able to communicate such wishes to the health care provider due to incapacitation.

- Advance directives may address the patient's wishes concerning the withholding or withdrawal of resuscitative, life-sustaining, or other types of medical care.

- Advance directives may appoint a proxy decision maker for these type health care decisions.

g.  **Proxy Decision Maker.**  For purposes of this PS, a proxy decision maker is a person authorized to make healthcare treatment decisions for a patient who is incapacitated and unable to make and/or communicate such decisions himself/herself.  The term "proxy decision maker" is used generally in this PS, and may refer to such person as named in an advance directive, formally executed power of attorney, or as appointed by a court.

P6031.01
1/15/2005
Page 4

- The authority, parameters, and procedures for creating such proxies are governed by the laws of the state in which the institution operates.

- Under no circumstances will another inmate be appointed as proxy decision maker.

h.  **Life Sustaining or Life Prolonging Procedures.**  "Life sustaining" or "life prolonging" procedures include any medical intervention or procedure that uses artificial means to sustain a vital function or artificially prolong life, e.g. mechanical ventilation, dialysis.

i.  **Terminal Condition.**  A "terminal condition" means an incurable or irreversible medical condition which, in the attending physician's opinion, is such that death will occur within a short time regardless of the application of medical procedures.

j.  **"Do Not Resuscitate" (DNR) Order.**  A "Do Not Resuscitate" order is the attending physician's directive, recorded in the inmate's health record, to withhold or withdraw extraordinary life-sustaining measures.

6.  **PROGRAM RESPONSIBILITY.**  Clinical care of inmates at Bureau institutions is under the direction of the Clinical Director, who provides direct patient care and supervises other health care providers.  Administrative responsibility and supervision of non-clinical staff is under the Health Services Administrator's (HSA) direction.

7.  **SCOPE OF SERVICES - CATEGORIES OF CARE**.  The Bureau of Prisons provides five major levels of care that define care provided to inmates.

Note:  Ordinarily, pretrial or non-sentenced inmates, and inmates with less than 12 months to serve, are ineligible for health services in subsections c., d., and e.

a.  **Medically Necessary - Acute or Emergent.**  Medical conditions that are of an immediate, acute or emergent nature, which without care would cause rapid deterioration of the inmate's health, significant irreversible loss of function, or may be life-threatening.

P6031.01
1/15/2005
Page 5

Examples of conditions considered acute or emergent include, but are not limited to:

- myocardial infarction;
- severe trauma such as head injuries;
- hemorrhage;
- stroke;
- status asthmaticus;
- precipitous labor or complications associated with pregnancy; and
- detached retina, sudden loss of vision.

Treatment for conditions in this category are essential to sustain life or function and warrant immediate attention.

b. **Medically Necessary - Non-Emergent.** Medical conditions that are not immediately life-threatening but which without care the inmate could not be maintained without significant risk of:

- serious deterioration leading to premature death;
- significant reduction in the possibility of repair later without present treatment; or
- significant pain or discomfort which impairs the inmates participation in activities of daily living.

Examples of conditions considered medically necessary, non-emergent include, but are not limited to:

- chronic conditions (diabetes, heart disease, bipolar disorder, schizophrenia);
- infectious disorders in which treatment allows for a return to previous state of health or improved quality of life (HIV, tuberculosis); or
- cancer.

c. **Medically Acceptable - Not Always Necessary.** Medical conditions which are considered elective procedures, when treatment may improve the inmate's quality of life. Relevant examples in this category include, but are not limited to:

- joint replacement;
- reconstruction of the anterior cruciate ligament of the knee; and
- treatment of non-cancerous skin conditions (e.g. skin tags, lipomas).

P6031.01
1/15/2005
Page 6

These therapeutic interventions always require review by the Institution Utilization Review Committee.  Relevant factors to consider in approving the proposed treatment in this category include, but are not limited to:

- the risks and benefits of the treatment;
- available resources;
- natural history of the condition; and
- the effect of the intervention on inmate functioning in his/her activities of daily living.

d.  **Limited Medical Value.**  Medical conditions in which treatment provides little or no medical value, are not likely to provide substantial long-term gain, or are expressly for the inmate's convenience.  Procedures in this category are usually excluded from the scope of services provided to Bureau inmates. Examples in this category include, but are not limited to:

- minor conditions that are self-limiting;
- cosmetic procedures (e.g. blepharoplasty); or
- removal of non-cancerous skin lesions.

Any treatment in this category which a health care provider recommends and the Clinical Director feels is appropriate will require the Institution Utilization Review Committee's review.

e.  **Extraordinary.**  Medical interventions are deemed extraordinary if they affect the life of another individual, such as organ transplantation, or are considered investigational in nature.

Any treatment provided in this category requires the Medical Director's review and approval with notification to the Regional Director.

8.  **UTILIZATION REVIEW.**  Every institution will have an established Utilization Review Committee (URC), chaired by the Clinical Director.  Other members should include, but not be limited to the:

- HSA or Assistant HSA;
- Medical Trip Coordinator;
- Health care provider(s) directly involved in the reviewed cases;
- Director of Nursing (if applicable); and
- A chaplain or social worker.